UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KINDRA WOOD,

    Plaintiff,

v.

UBER TECHNOLOGIES, INC. and
RASIER, LLC,

    Defendants.

Civil Action No. TDC-23-2149

**MEMORANDUM OPINION**

Self-represented Plaintiff Kindra Wood has filed a Complaint against Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier"), alleging state law claims of breach of contract and negligence arising out of her work as an Uber driver. Defendants have filed a Motion to Compel Arbitration and Dismiss. Though informed of her right to respond, Wood has not filed a memorandum in opposition to the Motion. Upon review of the Complaint and the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

**I.    Factual Allegations**

In the Complaint, Wood alleges that she provided rideshare services in Maryland as an independent contractor for Uber and Rasier, a wholly owned subsidiary of Uber. While working as an Uber driver, Wood filed various complaints with Defendants, including that, as a result of hacking of Defendants' rideshare software or otherwise, Defendants dispatched to Wood various categories of passengers who were problematic considering Wood's personal history of enduring

trauma. Her complaints included that she was sent underaged passengers, intoxicated individuals, members of fraternities and sororities, and individuals from "abusive entities," some of whom mocked the deaths of rape victims. Compl. at 4, ECF No. 4. Wood also alleges that Uber "withheld tips and underpaid" her, "revoked access to benefits," created a "hostile work environment," and did not allow Wood to "claim her long list of repeat clients." *Id.* at 4-5. On April 30, 2023, Defendants deactivated Wood's account, even though, according to Wood, her "ratings were up" and she had achieved "Platinum status" as an Uber driver prior to her deactivation. *Id.* at 3.

## II. The Arbitration Provisions

In connection with her work for Defendants, Wood entered into several contracts that included arbitration provisions. According to a declaration submitted by Peter Sauerwein, a Senior Manager for Corporate Business Operations at Uber ("the Sauerwein Declaration"), Wood began her work as an Uber driver in October 2016 and was required to review electronically and accept the December 2015 Technology Services Agreement (the "2015 TSA"),[1] an agreement between Rasier and Uber drivers, to be able to receive ride requests. Uber "is an intended, third-party beneficiary" of the 2015 TSA. 2015 TSA at 19 (§ 15.3(i)), Mot. Dismiss Ex. A, ECF No. 13-3. Section 15 of the 2015 TSA includes an arbitration provision (the "2015 TSA Arbitration Provision") stating that it is governed by the FAA, that subject to certain specified exceptions, it is "intended to require arbitration of every claim or dispute that lawfully can be arbitrated," and that "this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration." *Id.* at 18-19 (§ 15.3(i)). Specifically, the 2015 TSA

---

[1] All references to the lettered exhibits attached to Defendants' Motion use the pagination generated by the Court's Case Management / Electronic Case Files system.

Arbitration Provision "applies, without limitation, to all disputes between You and [Rasier] or Uber" arising out of or related to "your relationship with [Rasier], including termination of the relationship." *Id.* at 18 (§ 15.3(i)). It also states that disputes subject to arbitration "include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision." *Id.* Notably, the 2015 TSA Arbitration Provision provides that "[i]f you do not want to be subject this Arbitration Provision," the driver may "opt out of this Arbitration Provision by notifying [Rasier] in writing of your desire to opt out of this Arbitration Provision" within 30 days of executing the 2015 TSA, but that if there is no such opt-out, "you and [Rasier] shall be bound by the terms of this Arbitration Provision." *Id.* at 22 (§ 15.3(viii)).

On October 22, 2016, Wood agreed to the 2015 TSA, including its Arbitration Provision, by clicking the option "Yes, I Agree" on two separate confirmation pages. The first confirmation page provided a hyperlink to the 2015 TSA and stated that by "clicking [Yes, I Agree] below, you represent that you have reviewed all the documents above and that you agree to all the contracts above." 2015 TSA First Acceptance at 2, Mot. Dismiss Ex. B, ECF No. 13-4. The second confirmation page requested that the user "confirm that you have reviewed all the documents and agree to all the new contracts." 2015 TSA Second Acceptance at 2, Mot. Dismiss Ex. C, ECF No. 13-5.

In January 2020, Rasier issued a Platform Access Agreement (the "2020 PAA") to be entered into by Uber drivers. Section 13 of the 2020 PAA consists of an arbitration provision (the "2020 PAA Arbitration Provision") stating that it is governed by the FAA, that it "applies to all claims whether brought by you or us," and that it "requires all such claims to be resolved only by

3

an arbitrator through final and binding individual arbitration." 2020 PAA at 14-15 (§ 13.1(a)-(b)), Mot. Dismiss Ex. D, ECF No. 13-6. It further states that, as relevant here, it:

> applies, without limitation, to disputes between you and us . . . arising out of or related to your . . . use of an account to use our Platform and Driver App as a driver, background checks, your privacy, your contractual relationship with us or the termination of that relationship, . . . workplace safety and health, unfair competition, compensation, . . . retaliation, discrimination, or harassment . . . and all other federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us.

*Id.* at 15 (§ 13.1(c)). The 2020 PAA Arbitration Provision also states that those disputes include "without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision." *Id.* at 15 (§ 13.1(b)). Finally, as in the 2015 TSA Arbitration Provision, the 2020 PAA Arbitration Provision provided Wood with the option to opt out by providing notice within 30 days. According to the Sauerwein Declaration, electronic records establish that Wood accepted the 2020 PAA on July 3, 2020 through a process materially identical to the one followed to accept the 2015 TSA.

In January 2022, Rasier issued a revised Platform Access Agreement (the "2022 PAA"), to be entered into by Uber drivers, which also contained an Arbitration Provision (the "2022 PAA Arbitration Provision"). *See* 2022 PAA at 15 (§ 13.1(a)), Mot. Dismiss Ex. G, ECF No. 13-9. All relevant provisions of the 2022 PAA Arbitration Provision are materially identical to those contained in the 2020 PAA Arbitration Provision. According to the Sauerwein Declaration, electronic records establish that Wood accepted the 2022 PAA on February 2, 2022 through a process materially identical to the one followed to accept the 2020 PAA.

Defendants have provided copies of the electronic receipts they secured upon Wood's acceptance of each of the 2015 TSA, the 2020 PAA, and the 2022 PAA. The Sauerwein

4

Declaration also states that, based on a review of the relevant business records, Wood did not opt out of the Arbitration Provisions contained in the 2015 TSA, the 2020 PAA, or the 2022 PAA (collectively, the "Arbitration Provisions").

### III. Procedural History

On or about May 1, 2023, Wood filed this civil action against Defendants in the Circuit Court for Montgomery County, Maryland. In the presently operative Complaint, Wood alleges one count of breach of contract and one count of negligence against Uber and Rasier. Within the Complaint, Wood also references "Raiser, LLC Technologies, Inc." as a defendant. Compl. at 2. Where Defendants have stated that "Raiser, LLC Technologies, Inc." is not an actual business entity, Mot. Dismiss at 1 n.1, ECF No. 13-1, and Wood has not disputed this point, the Court construes all references in Wood's Complaint to "Raiser, LLC Technologies, Inc." as referring to Rasier, and any claims against this fictitious entity to be duplicative of the claims against Rasier.

On August 9, 2023, Defendants removed the case to this Court based on diversity jurisdiction. At a Case Management Conference on September 25, 2023, at which Defendants and Wood were present, the Court granted Defendants leave to file the present Motion to Compel Arbitration and Dismiss and issued an Order establishing a briefing schedule. Although Defendants then filed the present Motion in accordance with that schedule, Wood has not submitted a memorandum in opposition to the Motion.

### DISCUSSION

In the Motion, Defendants argue that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14 (2018), and based on the Arbitration Provisions, the Court should compel the parties to resolve this case by arbitration. Specifically, they argue that the FAA applies to the Arbitration Provisions, that they are valid and enforceable, that they contractually delegate

threshold questions regarding the scope, enforceability, waiver, applicability, revocability, or validity of the Arbitration Provisions to the arbitrator, and that, in the alternative, the present disputes fall within the scope of the Arbitration Provisions. Defendants also argue that because all claims in the Complaint are subject to arbitration, dismissal of the action is warranted.

## I. Legal Standards

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where documents outside the pleadings must be considered "to effectively assess the merits of th[e] motion." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). Here, the Court will apply the summary judgment standard because resolving this dispute requires consideration of materials beyond the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. FAA

Defendants' request to compel arbitration is governed by the FAA, which provides that: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Thus, a litigant in federal court may compel arbitration under the FAA upon a demonstration of: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the other party to arbitrate the dispute. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Three of these elements are not in dispute. The present action constitutes a dispute between the parties, and Wood has refused to arbitrate the dispute in pursuing her claims in court. There is no serious dispute that, consistent with the language of the 2015 TSA, the 2020 PAA, the 2022 PAA, and their Arbitration Provisions, the transactions between Wood and Defendants related to interstate commerce. As to the final element, Defendants have provided several contracts between Wood and Rasier, each of which includes an arbitration provision purporting to cover Wood's claims. Therefore, if the Court finds that the Arbitration Provisions are valid and enforceable by

Defendants, and if the claims in the Complaint are covered by those provisions, arbitration is required pursuant to the FAA.

## III.     Agreement

In determining whether a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As Wood resided "at all relevant times" in the state of Maryland and thus presumably entered into the contract in that state, Compl. at 2, Maryland law applies to the evaluation of the issue of contract formation. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988) ("[T]he law of the jurisdiction where the contract was made controls its validity and construction."). In Maryland, the formation of a contract requires an offer by one party, acceptance by another, and consideration. *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007). Under Maryland law, an arbitration clause is "an independently enforceable contract" that is a "severable part of the contract." *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 664-65 (Md. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)). Thus, in determining the validity of an arbitration clause in a contract, the provision "must be supported by consideration independent of the contract underlying it, namely, mutual obligation." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 609 (4th Cir. 2013). In the Motion, Defendants acknowledge that "whether there is a valid agreement to arbitrate between the parties" is a "gateway" issue properly evaluated by the Court in determining whether to compel arbitration under the FAA. Mot. Dismiss at 12.

The Court finds that each arbitration agreement—the 2015 TSA Arbitration Provision, the 2020 PAA Arbitration Provision, and the 2022 PAA Arbitration Provision—forms a valid contract under Maryland law. Each agreement was entered into based on an offer by Rasier to create a

legal agreement between Rasier and Wood. As for whether Wood accepted these offers, Maryland has adopted the Uniform Electronic Transactions Act, Md. Code Ann., Com. Law §§ 21-101 to 120 (West 2013), which provides that an "electronic record or electronic signature is attributable to a person if it was the act of the person," and that "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* § 21-108(a). Where Maryland law allows the attribution of electronic records to a person for purposes of demonstrating acceptance, and Defendants have provided both an unchallenged declaration and business records showing Wood's agreement history in support of their contention that Wood electronically signed each agreement, the Court concludes that Wood accepted each agreement.

As to the third requirement, each agreement is supported by adequate consideration. In determining the validity of an arbitration clause in a contract, the provision "must be supported by consideration independent of the contract underlying it, namely, mutual obligation." *Noohi*, 708 F.3d at 609 (citing *Cheek*, 835 A.2d at 665). Consideration may take the form of "[f]orbearance to exercise a right or pursue a claim," provided that it is a binding obligation. *Cheek*, 835 A.2d at 661. Here, the terms of each Arbitration Provision require both Wood and Rasier, outside of certain mutually applicable exceptions, to submit all disputes between them to arbitration, regardless of which party asserted them. Where both parties have mutually obligated themselves to be bound by arbitration, sufficient consideration exists for each Arbitration Provision to constitute a valid contract. *See id.* at 665 (stating that "mutual promises to arbitrate act as 'an independently enforceable contract'" in that "each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other'" (quoting *Holmes v. Coverall N. Am.*, 649 A.2d 365, 370 (Md. 1994))).

Finally, although Uber is not a party to the Arbitration Provisions, they remain enforceable as to Wood's claims against it because Uber, as Rasier's parent company, is a third-party beneficiary of these agreements. In Maryland, only a party or third-party beneficiary to a contract can sue to enforce the terms of that contract. *120 W Fayette St., LLLP v. Mayor & City Council of Balt.*, 43 A.3d 355, 368 (Md. 2012). The 2015 TSA Arbitration Provision explicitly states that "Uber Technologies, Inc. is an intended, third party beneficiary of" the 2015 TSA. 2015 TSA at 18 (§ 15.3(i)). The 2020 and 2022 PAA Arbitration Provisions likewise state that Rasier's "parent companies . . . may enforce this Arbitration Provision as third party beneficiaries." 2020 PAA at 15 (§ 13.1(a)); 2022 PAA at 15 (§ 13.1(a)). Therefore, Uber, as a third-party beneficiary, may also enforce the Arbitration Provisions.

### IV. Arbitrability

Although the Court has found that the Arbitration Provisions are binding contracts, "[a] court may compel arbitration of a dispute only when "the scope of the parties' agreement permits resolution of the dispute at issue." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Defendants argue that the Court need not decide this issue because the terms of the Arbitration Provisions explicitly reserve the question of arbitrability—whether the claims are subject to the arbitration provision—to be decided by the arbitrator. *See* Mot. Dismiss at 15-17. The United States Supreme Court "has consistently held that parties may delegate threshold arbitrability questions" to an arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). If "a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* However, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence

that they did so." *First Options of Chicago, Inc.*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Defendants point to the following language as establishing that the Arbitration Provisions have reserved questions of arbitrability to the arbitrator: (1) in the 2015 TSA Arbitration Provision, the statement that "disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge," 2015 TSA at 18 (§ 15.3(i)); (2) in the 2020 PAA Arbitration Provision, the statement that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision," are required "to be resolved only by an arbitrator," 2020 PAA at 15 (§ 13.1(b)); and (3) in the 2022 PAA Arbitration Provision, the statement that "disputes arising out of or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision" are required "to be resolved only by an arbitrator." 2022 PAA at 15-16 (§ 13.1(b)).

Upon review, the Court has concerns about the breadth of these provisions, particularly the language purporting to require that the arbitrator decide the issues relating to the formation and enforceability of the arbitration agreement. Where it is firmly established that a court may deem a purported arbitration agreement invalid if it does not meet the requirements of a properly formed contract, such provisions may be invalid. Indeed, provisions requiring an arbitrator to decide any issues, including those relating to contract formation or arbitrability, cannot be enforced without a threshold determination of whether the agreement containing those provisions is a valid contract.

11

See *Henry Schein, Inc.*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). Nevertheless, the language requiring that the arbitrator resolve disputes relating to the "application" of the TSA Arbitration Provision and disputes relating to the "applicability" of the 2020 and 2022 PAA Arbitration Provisions provides "clear and unmistakable" evidence that the question of the arbitrability of claims is to be resolved by the arbitrator. *See First Options of Chicago, Inc.*, 514 U.S. at 944. The Court therefore finds that it must compel arbitration.

## V.     Dismissal

As for whether to grant Defendants' request for dismissal of this case, while the FAA provides that courts should stay proceedings when compelling arbitration of certain claims, *see* 9 U.S.C. § 3, the United States Court of Appeals for the Fourth Circuit has held that when "all of the issues presented in a lawsuit are arbitrable," "dismissal is a proper remedy." *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Where the issue of arbitrability is to be decided by the arbitrator, dismissal may not be appropriate because the arbitrator may decide that certain issues are outside the scope of the arbitration agreement. In this instance, however, the 2015 TSA Arbitration Provision applies to "all disputes" between Wood and Rasier and its parent companies "arising out of or related to your relationship with" Rasier or to the 2015 TSA Arbitration Provision, and the other Arbitration Provisions are equally broad in their coverage. 2015 TSA at 18 (§ 15.3(i)); 2020 PAA at 15 (§ 13.1(c)); 2022 PAA at 16 (§ 13.1(c)). Even without deciding the arbitrability of Wood's claims, it is abundantly clear that they arise out of or relate to the various agreements or Wood's relationship with Defendants, so the Court concludes that that there is no reason to stay this case based on the potential for claims to be deemed not subject to arbitration. Accordingly, the Court will dismiss this case.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration and Dismiss will be GRANTED in that the Court will compel arbitration of all claims in the Complaint and dismiss this case. A separate Order shall issue.

Date: January 5, 2024



THEODORE D. CHUANG
United States District Judge